## OFFICERS OF A FOREIGN CORPORATION NOT INDIVIDUALLY LIABLE FOR ITS DEBTS. ·

Common Pleas Court of Hamilton County.

THE AMERICAN SOAP COMPANY *v.* CHARLES B. BOGUE.

Decided, December 18, 1924.

*Corporations—Attitude of Ohio Toward those of Foreign Charter— Not Unlawful for them to do Business in this State—Officers and Directors not Individually Liable for Debts Incurred by such a Corporation in the Regular Course of Business—Illinois Rule not in Force in Ohio.*

Officers and directors of a foreign corporation, which transacts in Ohio, in the regular course, business of the character for which it was organized, are not individually liable for debts incurred in the carrying on of such business, because of the failure of such corporation to comply with the provisions of Section 178 *et seq* relating to the filing of statements with the Secretary of State and appointment of an agent upon whom summons may be served.

*L. R. Lytle,* for the demurrer.
*H. J. Siebenthaler,* contra.

DARBY, J., LEBLOND, J., concurring. (Sitting in banc.)

The question presented by the demurrer in this case is this—Where a duly organized corporation of another state comes into Ohio and transacts business here, but fails to comply with General Code, Section 178 *et seq.* relating to filing statements with the Secretary of State and appointing an agent for service of summons, and such corporation transacts its business in Ohio in the ordinary way of corporations, are the officers and directors of such corporation personally liable for the debts of the corporation incurred in its own name and for the purpose of the corporation?

In support of the petition the attention of the court has been called to a case decided by the Supreme Court of Illinois, in which that court holds that in such a situation,

"The directors, officers and agents of a foreign corporation, which has not complied with the law authorizing it to do business in that state, are personally liable for debts contracted by them in the name of the corporation." *Ryerson & Son* v. *Shaw et al.*, 277 Ill., 524; *Critchell & Co.* v. *Armour, et al.*, 228 Ill. App., 28.

It seems that the foundation of the Illinois court's ruling in these cases is, that if a foreign corporation has failed to comply with the conditions prescribed by a local act, the contract of the corporation is *void* and no action can be maintained thereon.

In view of the statute in force in this state and decisions of our courts to which attention will be called, and the general understanding among courts and lawyers with reference to the status of such foreign corporations failing to comply with the state law, the authority of the Illinois decisions is open to question. It is lawful, and is not against public policy for foreign corporations, lawfully organized, to do business in Ohio.

In *Newburg Petroleum Co.* v. *Wears et al.*, 27 O. S., 343, it is laid down that

"1. It is not contrary to the laws of Ohio, nor against public policy, in the present condition of her laws, for a foreign corporation, lawfully organized in a sister state, to do business in Ohio.

2. A foreign corporation, authorized by the laws of the state in which it was organized to do business in this state, may transact business in Ohio not inconsistent with Ohio laws; may sue or be sued in our courts.

3. Persons entering into contract with such foreign corporation concerning property or rights in property, appropriate to its business in Ohio, will be estopped, after dealing with said corporation, recognizing by their acts its validity and receiving the benefits of the contract, from denying the power of the corporation to make the contract, in an action on the contract."

In *Bank* v. *Hall*, 35 O. S., 158, the court on page 167 say:

"The right of such foreign corporation to acquire and hold property in the state, and to sue and be sued in her courts, has been repeatedly recognized. In *Hanna* v. *Inter-*

*national Petroleum Co.,* 23 Ohio St., 622, it was said. 'that a foreign corporation, under the present laws of Ohio, can hold property in this state and sue and be sued in her courts, is well settled.' And to the argument that the company which was organized in Pennsylvania was not a corporation because it was empowered by its charter to do business outside the state of its creation as well as within, it was said 'that the company was a legal corporation in Pennsylvania as soon as organized there, and without commencing business there. Being such, it surely had the right to sue for and recover its property wherever found, provided the laws of the place did not deny it the right.' In *Newburg Petroleum Co.* v. *Weare,* 27 Ohio St., 343, it was held by the Commission that 'to permit a corporation, lawfully organized in another state, to do business in Ohio, was not against public policy, nor contrary to her laws.' There is nothing in the facts of the present case to withdraw it from the operation of the principle applied in the above cases.''

In *Peckham Iron Co.* v. *Harper,* 41 O. S., 100, on page 106, the court say:

''Furthermore, the dealings of Harper & Co., with the Peckham Iron Co., in its corporate name, were of such a nature as not to permit a plea by them of *nul tiel* corporation. In full recognition of the plaintiff as a body corporate, they got possession of the one hundred and eighty tons of iron in question. The transaction they turned largely to their own pecuniary profit and advantage; and in subsequent dealing with the plaintiff, in reference to a purchase of stock in its corporation, they fully recognized its corporate existence and capacity. Under such circumstances, we think that Harper & Co., are estopped to deny the legal existence of the plaintiff as a corporation. *Bigelow on Estoppel,* 464; *Newburg Petroleum Co.* v. *Weare,* 27 Ohio St., 343; *Farmers' & Merchants' Ins. Co.* v. *Needles,* 52 Mo., 17; *City of St. Louis* v. *Shields,* 62 Id., 247.''

It is true that all of these cases were decide before General Code Sections 178 *et seq.* or their predecessors were passed. Though this be the fact they state the general attitude of Ohio to foreign corporations, and that attitude has not been modified so far as the legality of contracts of such foreign corporations is concerned, except as it relates to the remedy.

A careful reading of the General Code fails to disclose any purpose on the part of the Legislature of Ohio to nullfy, contracts made with such foreign corporations. So far as the express terms of the statute are concerned, as they relate to the contracts of such corporation, an action by the corporation is suspended. As to any other purpose or effect of non-compliance with these sections of the Code so far as it relates to the contract of such corporation, the statute is silent, and it .has been the common practice in this state, in case such corporation has maintained a suit, to permit it to comply with the statute subsequently, see General ˙Code Section 187. The Code does provide for penalties against individuals soliciting or transacting business, but there is no further penalty provided than those suggested.''

We are not dealing with a case of liability for debts incurred before the corporation was organized, neither are we dealing with the case of a corporation acting *ultra vires;* but here is a case of a legally organized corporation admitted to this state by comity, transacting business in an ordinary way, its only delinquency ˙being in failing to comply with those sections of the code which are intended to place it on a parity with domestic corporations.

It was decided in this state many years ago by Pugh, J., of the Franklin county court of common pleas that a contract made by a foreign corporation in Ohio, before complying with the sections in question, is not void, but may not be sued on until the law is complied with. *Fergus* v. *Columbus,* 6 N. P., 82. The principle laid down in that case has been followed wherever the matter has arisen and has never been departed from, and it would seem in view of the˙ General Code, that there is no rational argument that can be presented to overcome that principle.

In *State* v. *Pohlmeyer,* 59 O. S., 491, the court recognized the propriety of the employment of agents of such foreign corporations not complying with the code, and decided that the criminal laws of this state could be invoked against an agent guilty of embezzlement from such foreign corporation. Now, if the contract of employment of Pohlmeyer was in-

valid or void, the decision of the court in that case might have been otherwise. While it based its holding upon the theory of an estoppel, it recognized the validity of the employment of the agent.

The plaintiff in this case was in no worse position by reason of the failure of the Illinois corporation to comply with the sections referred to, than if it had complied with those sections. The property of the corporation was no greater or less or different than if the statutes had been complied with. The plaintiff dealth with the corporation and it conclusively appears from the petition that it had no idea that it was acting with any individual.

An illuminating decision by Dixon, J. of this court in *Hennegan* v. *Nunner et al.*, 25 N. P., (N. S.), sustains in principle the view of the court in this case, and there it was held that,

"The mere fact that they (the incorporators) failed to certify to the Secretary of State when ten per cent of the capital stock was subscribed as required by statute, and failed to elect officers and directors, does not render their status that of co-partners."

Impressed with the weight to be given to the authority of the court of last resort of Illinois, but believing that the policy of this state is contrary to that of Illinois in such cases, this court is constrained to hold that the defendant as an officer of the said foreign corporation is not personally liable for the debts of such corporation.

The demurrer is therefore sustained